**In re the Marriage of Deborah Cheryl MITTERHAUSER, petitioner, Respondent,**

v.

**Klaus MITTERHAUSER, Appellant.**

**No. C6–86–1666.**

Court of Appeals of Minnesota.

Jan. 27, 1987.

Robert M. Spector, Meshbesher, Singer & Spence, Minneapolis, for respondent.

Klaus Mitterhauser, pro se.

Considered and decided by POPOVICH, C.J., and PARKER and LESLIE, JJ., with oral argument waived.

## OPINION

LESLIE, Judge.

The marriage of Klaus and Deborah Mitterhauser was dissolved on July 17, 1986. The trial court's judgment and decree ordered Klaus to pay Deborah the sum of $76,230.48 to effect a fair division of the marital assets. Klaus appeals from this judgment, contending the trial court erred in its valuation and distribution of assets. We affirm.

## FACTS

Appellant Klaus Mitterhauser and respondent Deborah Cheryl Mitterhauser were married on July 8, 1979. They had no children during their marriage. The major asset of the parties is their interest in Mitterhauser, Inc., a corporation doing business as the Mitterhauser La Cuisine restaurant in Minneapolis.

In May of 1982, Klaus and Deborah opened the Mitterhauser La Cuisine restaurant with the financial help of a third party. Klaus and Deborah each owned 17.5 shares of stock in the corporation and the third investor owned 20 shares. Klaus and Deborah controlled the day-by-day operations of the restaurant. The other investor did not participate in the restaurant's management or operations.

Klaus and Deborah separated in May of 1984. Since that time Klaus treated the business as a sole proprietorship and did not allow Deborah a role in the restaurant's operation. She found a new position as executive pastry chef at a bakery where

she now earns $32,000 annually. Klaus draws an annual salary of $15,900 plus certain benefits from the restaurant.

At trial, Klaus was represented by an attorney. He presented testimony from the company's bookkeeper and a private CPA to appraise the value of Mitterhauser, Inc. They used a book value, or liquidation approach to arrive at the conclusion that the corporation had nominal value, if any.

A third expert, a CPA, testified on behalf of Deborah. This expert used a gross sales method for appraising the value of the corporation. He found that the gross sales had "stabilized" at approximately $400,000 annually. Applying a 70% multiplier to the gross sales figure, the expert calculated the corporation had a net present value of $280,000.

The trial court chose to adopt the gross sales method of valuation over the liquidation approach. The court supported its decision by stating:

> The flaw in the book value approach is that it fails to acknowledge the going concern nature of the restaurant, a factor which imparts significant value to the corporation. The restaurant is in a location near many hotels where it can attract out of town visitors. It has already received favorable reviews and has established a reputation for itself. A liquidation approach is inappropriate in this matter.

After adopting the gross sales method to arrive at an $89,250 value for Deborah's 17.5 shares in the business, the court reduced this sum by 30% in light of Deborah's minimal input to the corporation in recent years. The court found that Deborah's shares had a value of $62,475 and awarded her that amount in exchange for her 17.5 shares.

The trial court also made specific findings regarding stipulated delinquent spousal maintenance and health insurance costs, cash assets of each party, and items of personal property. The court awarded each party those items of property within their possession, save for a number of specifically identified items. Finally, the court

ordered Klaus to pay Deborah the sum of $76,230.48 to effect a fair division of the marital assets, including the business, and further ordered Klaus to pay Deborah $1138.58 for delinquent spousal maintenance and health insurance costs.

Klaus presented evidence at trial of damage done to his restaurant. Klaus claimed Deborah had repeatedly burglarized and vandalized the business, sometimes gaining access by use of her keys. The trial court did not rule on this issue, failing to even mention it in its findings and order.

Klaus appeals the trial court's decision pro se. He claims the court erred by adopting the gross income method for valuation of the restaurant. He also contests the court's valuation of the parties' assets and the court's failure to mention some specific items of valuable personal property in Deborah's possession. Finally, he argues that the trial court should have considered the evidence presented regarding the alleged foul play of Deborah. This court's review of the matter is hampered by the fact that Klaus did not provide the court with a transcript of the hearing. Additionally, Deborah asks this court to award her attorney's fees and costs on appeal.

## ISSUE

Was the trial court's valuation of assets and division of property clearly erroneous?

## ANALYSIS

Klaus contends that the trial court erred by adopting the gross income method for valuation of the restaurant. Unless clearly erroneous, we will not reverse a trial court's findings. Minn.R. Civ.P. 52.01. The trial court's method of valuation must be affirmed if it has an acceptable basis in fact and principle even though a reviewing court may have adopted a different approach. *Castonguay v. Castonguay*, 306 N.W.2d 143, 147 (Minn. 1981). It is within the trial court's discretion to choose one appraisal over another, and by taking one of two proffered apprais-

als, the trial court cannot be said to have erred. *Kostelnik v. Kostelnik,* 367 N.W.2d 665, 669 (Minn.Ct.App.1985).

In determining the restaurant's value, the trial court considered the restaurant's favorable reviews, good reputation, and location near many hotels. The court found that the liquidation approach failed to take these factors into account and ruled that to ignore these factors would be error. The court adopted the gross income approach presented by Deborah's expert.

■ Klaus has presented over fifty documents on appeal in support of his claim that the restaurant is faltering and has merely nominal value. These documents are not part of the record on appeal. "The papers filed in the trial court, the exhibits, and the transcript of the proceedings, if any, shall constitute the record on appeal in all cases." Minn.R.Civ.App.P. 110.01. An appellate court cannot base its decision on matters outside the record on appeal and any matters not part of the record must be stricken. *Safeco Insurance Co. v. Diaz,* 385 N.W.2d 845, 847 (Minn.Ct.App.1986). The additional evidence presented by Klaus may not be considered by this court and must be stricken from the record.

■ Because the trial court has great discretion to choose one appraisal over another, and because there is some basis in fact to support the use of the gross income valuation method, we find that the trial court's valuation of the restaurant was not clearly erroneous.

■ Next, Klaus claims that the trial court erred in its findings of fact regarding the amount of money in the banking accounts of the parties. The trial court made specific findings regarding eleven separate banking and savings accounts of the parties. Again, Klaus has presented documentation on appeal which was not before the trial court. Additionally, Klaus has not provided this court with a transcript of the trial. Appellant bears the burden of providing an adequate record on appeal and where no transcript is ordered, the appellate court cannot review the sufficiency of the evidence. *Custom Farm Services Inc. v. Collins,* 306 Minn. 571, 572, 238 N.W.2d 608, 609 (1976). There is no evidence in the record which contradicts the trial courts findings regarding the assets of the parties. This item is affirmed.

Klaus argues on appeal that he should not have to pay any past-due spousal maintenance and health insurance costs. The trial court found that Klaus had stipulated that spousal maintenance and health insurance costs were in arrears and agreed to pay these costs. The court ordered Klaus to pay $1138.58. Klaus claims he does not recall stipulating to pay these items and asks this court to reverse the trial court's order. The court found that Klaus had stipulated as such and ordered him to pay the amount in arrears. There is no evidence to the contrary, therefore this court must affirm the trial court's decision on this issue.

Two items of personal property, a fur coat and a silver set, were not specifically mentioned in the trial court's order. The trial court found that "(t)he parties stipulated that each should be awarded the personal property currently in his or her possession." Accordingly, the court made the following order:

> Each of the parties is awarded, free of any interest of the other party, all personal property in her/his possession, including, but not limited to, vehicles, household furniture, equipment and other items of household personalty, provided, however, Respondent shall deliver to Petitioner's attorney the following personal property:

(A full-page list of specifically enumerated items followed this paragraph.) The fur coat and silver set were not mentioned in the list of specifically enumerated items awarded to Deborah, or anywhere else in the order. However, because they were in Deborah's possession, they are awarded to Deborah pursuant to the order regarding property in possession.

Klaus claims the trial court overlooked these two items because "the long lists of souvenirs and small personal belongings of

Petitioner confused everyone there and in that turmoil the big assets were forgotten." The parties stipulated to keeping any property in their possession, and the court so ordered. Klaus has presented no valid legal argument why he should be awarded these two items of property. Furthermore, because we have no trial court transcript, we are unable to tell if the trial court was allowed to consider the items. For these reasons we must affirm the trial court on this issue as well.

Klaus also contends that the trial court erred by not awarding him damages for alleged harassment, vandalism and theft committed by Deborah. Klaus claims it was inequitable to award Deborah money for the business when she has already taken money out of the business through acts of violence. Klaus presents several documents in support of his claim.

However, these documents were not introduced at trial and therefore are not part of the record on appeal. *See Safeco*, 385 N.W.2d at 847. Again, a trial court transcript may have been helpful to support Klaus' argument here, if he had provided one. However, because the record is incomplete we are unable to determine whether the trial court even had a chance to consider this evidence. The trial court made absolutely no finding regarding the alleged foul play of Deborah. Because there is no evidence in the record supporting Klaus' allegations, there is no cause for reversal here.

█ The final issue to address is whether this court should award attorney's fees and costs to Deborah on appeal. In this case it appears Klaus has some good faith arguments for reversal. He appealed because he felt the trial court made some errors in its decision, and presented evidence in support of his arguments. We deny Deborah's request for attorney's fees and costs.

## DECISION

Because the trial court did not err in its property valuation and distribution, we af-firm. Deborah's request for costs and damages on appeal is denied.

Affirmed.